**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| **BTL INDUSTRIES, INC.**, a Delaware corporation | |
| Plaintiff, | Case No. |
| v. | |
| **REJUVA FRESH LLC**, a limited liability company, | |
| Defendant. | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff BTL Industries, Inc. ("BTL"), by its attorneys, for its Complaint against Rejuva

Fresh LLC ("Rejuva Fresh"), alleges as follows:

**NATURE OF THIS ACTION**

1.      This is a civil action by BTL arising out of Rejuva Fresh's patent infringement in

violation of the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; trademark infringement,

unfair competition, false designation of origin, and false advertising under the Lanham Act, 15

U.S.C. §§ 1114, 1125(a)); deceptive trade practices under the Maine Deceptive Trade Practices

Act, 10 M.R.S.A. § 1200, *et seq.*; and trademark infringement and unfair trade practices under

under the common law of Maine.

2.      BTL and its affiliates pioneered the application of high-intensity, focused

electromagnetic technology in non-invasive aesthetic body-contouring devices. In June 2018,

BTL launched the ground-breaking EMSCULPT® aesthetic body-contouring device that uses

this technology in the United States, after the device was cleared by the U.S. Food and Drug

Administration (FDA). BTL and its affiliates protected the EMSCULPT device—and the

1

technology used in the device—with numerous patents and federally registered trademarks and copyrights.

3.      Rejuva Fresh promotes and sells certain non-invasive body contouring devices in the United States. On information and belief, Rejuva Fresh has and continues to infringe BTL's patents directed to body-contouring methods and devices by importing, offering for sale, or selling these devices. On information and belief, Rejuva Fresh advertises these devices by improperly using BTL's trademarks, and confusingly similar variations of these trademarks, in its promotional and informational materials for these devices. Rejuva Fresh also markets these devices with altered versions of marketing materials that BTL provides exclusively to its customers under license to use in promoting services related to BTL devices, and by referencing the research findings from clinical studies that BTL conducted on its EMSCULPT device.

## PARTIES

4.      BTL is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

5.      On information and belief, Rejuva Fresh is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business at 551 Red Bridge Road, Ellsworth, Maine 04605.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, 1121, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)-(b).

7.      This Court has supplemental jurisdiction over BTL's claims arising under the laws of Maine, pursuant to 28 U.S.C. § 1367(a), because BTL's state-law claims are so related to

BTL's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

8.    On information and belief, this Court has personal jurisdiction over Rejuva Fresh because Rejuva Fresh is a limited liability company whose principal place of business is located in this District and Rejuva Fresh has committed in this District acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c) and intends a future course of conduct that includes acts of patent infringement. On information and belief, Rejuva Fresh has purposefully directed the offers for sale, sale, importation, and distribution of certain infringing non-invasive body contouring devices, knowing that they will be sold and used in the State of Maine, and has made the product available for sale in the State of Maine. Further, Rejuva Fresh has advertised and promoted these devices using BTL's trademarks, and confusingly similar variations of these trademarks, in the State of Maine. Rejuva Fresh has committed acts of trademark infringement, and false, misleading, and deceptive advertising under federal and state law, and intends a future course of such conduct in this District. BTL's causes of action arise out of these activities. These acts have led and will lead to foreseeable harm and injury to BTL in the State of Maine. On information and belief, Rejuva Fresh has derived, and will derive, substantial revenue from the sale of these infringing devices in the State of Maine.

9.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Rejuva Fresh is a resident of this District and is subject to personal jurisdiction in this District.

## BACKGROUND

10.    BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and

3

innovative FDA-cleared devices and developed protocols for using the technology for aesthetic therapies. As described above, BTL denotes its products and services that feature this technology with its HIFEM brand and other trademarks.

11.     The first such device that BTL developed was the EMSCULPT® device (shown below), a standalone, non-invasive, aesthetic body-contouring device. *See*, Ex. A (BTL Press Release). BTL's patent-protected EMSCULPT device uses high-intensity electromagnetic energy to induce powerful muscle contractions in a patient. BTL has developed specifically configured EMSCULPT applicators, tailoring each type of applicator to a specific target area.



12.     The EMSCULPT device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create repetitive muscle contractions that result

in a non-invasive method of toning muscle and body sculpting.

https://bodybybtl.com/solutions/emsculpt-neo/.

13.    In June 2018, BTL received clearance from the FDA for its EMSCULPT device with large applicators and began to sell the device in the United States for the improvement of abdominal tone, strengthening of the abdominal muscles, development of firmer abdomen, and for strengthening, toning, and firming of buttocks and thighs. *See* https://bodybybtl.com/solutions/emsculpt-neo/. In October 2018, BTL received FDA clearance for an additional indication for the improvement of muscle tone and firmness and for strengthening muscles in arms. *Id.* In July 2019, BTL received FDA clearance for the EMSCULPT device with both large and small applicators for the improvement of abdominal tone, strengthening of the abdominal muscles, development of firmer abdomen, strengthening, toning, and firming of buttocks, thighs, and calves, as well as improvement of muscle tone and firmness, for strengthening muscles in arms. *Id.* The smaller applicators are intended for smaller treatment areas.

14.    BTL markets and distributes its non-invasive aesthetic body-contouring EMSCULPT device to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMSCULPT devices that incorporate its proprietary technology, muscle toning protocols, and applicators in the United States.

15.    BTL's EMSCULPT device created a new market in which it quickly became the innovative industry leader. Before BTL launched the EMSCULPT device in 2018, no other product used high-intensity, focused electromagnetic technology to tone and firm muscle for non-invasive aesthetic body contouring. Prior devices in the aesthetics market used different

technology to reduce fat or treat cellulite. BTL continues to market and distribute the

EMSCULPT device throughout the United States.

16.    The aesthetic industry has recognized BTL's innovation, hailing it as having taken

"the aesthetics industry by storm"; praising BTL as being the first to apply high-intensity,

focused electromagnetic energy technology for aesthetics; and lauding the EMSCULPT device

as having "transformed treatment protocols." Ex. A (BTL Press Release). Patients recognized

EMSCULPT treatments as one of the 2019 "Most Worth It Surgical and Nonsurgical Aesthetic

Procedures." Ex. B (RealSelf Press Release). The EMSCULPT device has been described as

"[o]ne of the newest and most progressive body-shaping technologies" on the market. Ex. C

(NewBeauty 2019 Award Winners: Best Innovations).

17.    BTL's market success and superior performance are by-products of its

technological innovations over the past several decades. BTL continues to implement these

innovations today. BTL has protected its investment into its innovations and its brand with

patents, trademarks, and copyrights. BTL lists the patents that cover its products on its website at

www.btlnet.com/patents.

### A.    The Asserted Patents

18.    On November 19, 2019, the United States Patent and Trademark Office (USPTO)

duly and lawfully issued U.S. Patent No. 10,478,634 (the "'634 patent"), entitled "Aesthetic

Method of Biological Structure Treatment by Magnetic Field." A true and correct copy of the

'634 patent is attached hereto as Exhibit D. The '634 patent was exclusively licensed to BTL,

and BTL possesses the exclusive right of recovery for any past, present, or future infringements

of the '634 patent, including equitable relief and damages.

19.    On June 30, 2020, the USPTO duly and lawfully issued U.S. Patent No.

10,695,575 (the "'575 patent"), entitled "Aesthetic Method of Biological Structure Treatment by

Magnetic Field." A true and correct copy of the '575 patent is attached hereto as Exhibit E. The '575 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '575 patent, including equitable relief and damages.

20.    On March 8, 2022, the USPTO duly and lawfully issued U.S. Patent No. 11,266,852 (the "'852 patent"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field." A true and correct copy of the '852 patent is attached hereto as Exhibit F. The '852 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '852 patent, including equitable relief and damages.

21.    On May 2, 2017, the USPTO duly and lawfully issued U.S. Patent No. 9,636,519 (the "'519 patent"), entitled "Magnetic Stimulation Methods and Devices for Therapeutic Treatments." A true and correct copy of the '519 patent is attached hereto as Exhibit G. The '519 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '519 patent, including equitable relief and damages.

22.    On March 24, 2020, the USPTO duly and lawfully issued U.S. Patent No. 10,596,386 (the "'386 patent"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field." A true and correct copy of the '386 patent is attached hereto as Exhibit H. The '386 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '386 patent, including equitable relief and damages.

7

B.    **BTL's Trademarks**

23.    BTL uses and licenses registered and unregistered trademarks and trade dress to

market its aesthetic equipment and treatments in the United States including the following

federally registered marks (the "BTL Trademarks"):

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| 5,688,619 | **HIFEM** | Mar. 5, 2019 | Sept. 19, 2017 | Class 10: Medical and aesthetic apparatus and instruments generating electromagnetic, magnetic, electrical, mechanical, radiofrequency or thermal energy for use in skin treatment procedures; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, treatment of pigmentation spots, increase in muscle volume, increase in number of muscle fibres and increase in muscle tonus; medical apparatus and instruments for the treatment of cellulite; therapeutic facial masks; facial toning machines for cosmetic use; electric stimulation and magnetic stimulation apparatus for physical therapy purposes for the treatment of nerve and muscle pain and elimination of muscular spasms; gynecological and urological apparatus and instruments, namely for genital |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment.<br><br>Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical removal of body cellulite. |
| 5,915,636 | **EM** | Nov. 19, 2019 | Jan. 8, 2019 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence.<br><br>Class 44: Health assessment services; medical services, namely, providing treatment for patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; gynecological services; urology medical care services; rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | surgical body shaping services; medical services, namely, removal of body cellulite; physical therapy services. |
| 6,206,098 | EM | Nov. 24, 2020 | July 2018 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence.<br><br>Class 44: Health assessment services; medical services, namely, providing treatment for patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; gynecological services; urology medical care services; rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and surgical body shaping services; medical services, namely, removal of body cellulite; physical therapy services. |
| 5,572,801 | **EMSCULPT** | Oct. 2, 2018 | Sept. 29, 2017 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; above medical apparatuses with exception for the treatment of the nasopharynxs including inhalers and nasal irrigators; massage apparatus; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynaecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment |
| 6,069,279 | **EMSCULPT** | Jun. 2, 2020 | Sept. 29, 2017 | Class 44: medical services; gynecology services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; removal of body cellulite |
| 6,373,947 | **EMSCULPT NEO** | June 1, 2021 | [DATE] | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment of sexual dysfunction, gynecological treatment and pelvic floor treatment.<br><br>Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical services, namely, removal of body cellulite. |

24.    BTL has continuously and exclusively used the BTL Trademarks and has never

abandoned them. The BTL Trademarks are validly registered in the United States and are in full

force and effect. True and correct "status" copies of the BTL Trademark registrations, obtained

from the Trademark Status Document Retrieval ("TSDR") database of the United States Patent

and Trademark Office, are attached to this Complaint as Exhibit I. These registrations constitute

prima facie evidence of validity of the BTL Trademarks and of BTL's exclusive right to use the

BTL Trademarks under 15 U.S.C. § 1057(b).

25.    The BTL Trademarks therefore perform an important source-identifying function

for BTL's aesthetic body-contouring devices like the EMSCULPT and associated treatment

services. The BTL Trademarks signify to purchasers that the body-contouring devices come

from BTL, and the body-contouring services are rendered by BTL's devices and administered by

BTL-trained and BTL-authorized service providers. The BTL Trademarks are inherently

distinctive and are associated with BTL's innovative aesthetic body-contouring devices that have

acquired considerable brand loyalty through BTL's sales and promotion, and direct word-of-

mouth promotion by consumers. In addition, BTL has expended significant time, money, and

resources in developing, marketing, advertising, promotion, and selling its products and services

under its trademarks, including the BTL Trademarks, in the United States. The market reputation

and consumer goodwill associated with the BTL Trademarks are of significant value to BTL.

### C.    Rejuva Fresh's Unlawful Conduct

26.    On information and belief, Rejuva Fresh recently began competing with BTL in

the non-invasive body-contouring industry by manufacturing and selling non-invasive body-

contouring devices, which utilize electromagnetic waves to generate muscle contractions.

Specifically, Rejuva Fresh markets and sells the Personal EMSZERO NEO Sculpting Machine,

the Professional EMSZERO NEO Body Sculpting Machine, the EMSZERO NEO Body

Contouring Machine, the Professional Body Sculpture EMSLIM NEO Machine, the Mini

EMSLIM NEO Body Sculpting Machine, the EMSLIM NEO for Home Use, the EMSLIM Body

Sculpting Machine, the Mini EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, and the Personal EMS Sculpting Machine (the "Accused Devices").

27.     On information and belief, the Accused Devices all implement the same or substantively the same technology as the Asserted Patents. The landing pages on Rejuva Fresh's website for each of the devices named above use identical or substantively identical language, photographs, videos, brochures, user manuals, product specifications, and other informational and promotional materials to describe the underlying technology for each of the Accused Devices. *Compare*, *e.g.*, Landing Page for the EMSZERO Neo Body Contouring Machine (https://rejuvafresh.com/products/emszero-neo-body-contouring-machine) ("30 minutes [sic] treatment session is equivalent to about 20,000 muscle exercises"), *with* Landing Page for Professional EMSZERO Neo Body Sculpting Machine (https://rejuvafresh.com/products/premium-emszero-neo-body-sculpting-machine) ("One 30 minutes [sic] treatment session is equivalent to about 20,000 muscle exercises.").

28.     On information and belief, the Accused Devices include or perform each and every limitation of at least one claim of the Asserted Patents, either literally or under the doctrine of equivalents. By making, offering to sell, selling, and/or importing into the United States the Accused Devices, Rejuva Fresh has directly infringed, and continues to directly infringe, literally or by doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(a).

29.     On information and belief, Rejuva Fresh actively encourages, promotes, distributes, provides instruction for, and supports the use of the Accused Products by its customers in a manner that directly infringes, either literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(b), knowing and intending that

Rejuva Fresh's customers will commit acts in such a manner as to directly infringe the Asserted Patents.

30.    On information and belief, Rejuva Fresh has known of the Asserted Patents since at least July 14, 2022, when BTL sent Rejuva Fresh a cease-and-desist letter informing Rejuva Fresh that its marketing and promotional activities for the Accused Devices infringed BTL's trademarks, patents, and copyrighted works. BTL's "Patent Labeling" webpage also lists the Asserted Patents and identifies them as covering the EMSCULPT device. https://www.btlnet.com/patents.[1]

31.    Rejuva Fresh has used and continues to use the BTL Trademarks, and confusingly similar variations of the BTL Trademarks, in its informational and promotional materials for the Accused Devices. Rejuva Fresh's webpage for the Professional Body Sculpture EMSLIM NEO Machine, for example, includes a photo of the device bearing the mark "EMSCULPTING" on the body of the device:

---

[1] Moreover, at least with respect to the '519 and '386 patents—which include claim limitations for "cooling" the claimed subject matter—Rejuva Fresh knew of these patents because the landing pages for several of the Accused Devices explicitly reference a "[p]atented cooling system." *See*, *e.g.*, Landing Page for EMSLIM NEO for Home Use (https://rejuvafresh.com/products/emsculpt-neo-for-home-use).



32.     The user manuals for several of the Accused Devices also use confusingly similar variations of BTL's EMSCULPT mark to refer to their corresponding devices. For example, the user manual for the EMSLIM NEO for Home Use refers to this device as the "EM SCULPT" and "E-M SCULPT." Ex. A at 1, 3, 6. The user manual for the Mini EMSLIM NEO Body Sculpting Machine also refers to this device as the "EM-S-SCULPT." Ex. B at 5. And the user manual for the Mini EMSLIM Body Sculpting Machine also refers to this device as the "EM-SCULPT." Ex. C at 18.

33.     Rejuva Fresh has also used and continues to use BTL's HIFEM trademark, and confusingly similar variations of this trademark, in its informational and promotional materials for the Accused Devices. The manual for the Mini EMSLIM Body Sculpting Machine, for example, refers to the device as a "HIFEM beauty muscle instrument" multiple times, *id.* at 2,

and a video advertising this device on Rejuva Fresh's YouTube channel refers to this device (at time-marker 0:09) as a "portable HIFEM machine." (https://www.youtube.com/watch?v=LrEw5L_l7I8). As another example, the manual for the Mini EMSLIM NEO Body Sculpting Machine repeatedly refers to the Mini EMSLIM NEO Body Sculpting Machine as a "HIFM beauty muscle instrument," *see e.g.*, Ex. K at 14, which is a confusingly similar variation of BTL's HIFEM mark.

34.     Rejuva Fresh has and continues to intentionally and willfully, and without BTL's consent, market and promote the Accused Devices with BTL's proprietary photographs. For example, Rejuva Fresh's product listing page for the Personal EMSZERO NEO Sculpting Machine (https://rejuvafresh.com/products/personal-emszero-neo-sculpting-machine) depicts the following images:







35.    These are altered versions of marketing photos (reproduced below) that BTL owns and uses to advertise and promote its EMSCULPT device:







ДО    ПОСЛЕ **EMSCULPT**

4 НЕДЕЛИ ПОСЛЕ 4 ПРОЦЕДУР, ФОТО ПРЕДОСТАВЛЕНЫ: РАДИНА ДЕНКОВА, ВРАЧ



BEFORE    AFTER **EMSCULPT**

3 MONTHS AFTER THE LAST TREATMENT, COURTESY OF: BRUCE E. KATZ, M.D.



36.    As another example, Rejuva Fresh's product listing page for the EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/emszero-neo-body-contouring-machine) depicts the following images:



37.    Five of the six photos depicted above are in fact marketing photos that BTL owns and uses to promote its EMSCULPT device. Unaltered versions of those photos are reproduced below:









38.    Rejuva Fresh never requested from BTL, nor did BTL give, permission for Rejuva Fresh to use the BTL Photos to market and promote the Accused Devices. By using BTL-owned promotional photos, which depict the BTL EMSCULPT device, to market and promote the Accused Devices, Rejuva Fresh continues to misrepresent the quality of these devices and does so in a manner that has and will likely cause interested consumers to confuse these devices with BTL and BTL's EMSCULPT device.

39.    On information and belief, Rejuva Fresh has marketed and continues to market and promote its Accused Devices with research findings from clinical studies that were sponsored by BTL and demonstrated the efficacy and safety of using BTL's EMSCULPT device—not the Accused Devices. For example, the manuals for the Mini EMSLIM NEO Body Sculpting Machine and the Mini EMSLIM Body Sculpting Machine represent that 4 to 6 treatments with these devices reduces fat and increases muscle by 19% and 16% respectively. *See* Ex. K at 12; Ex. L at 18.

40.    Rejuva Fresh's online listing for the EMSLIM Body Sculpting Machine (https://rejuvafresh.com/products/emslim-body-sculpting-machine-with-4-handles) similarly

represents that the device has been proven to reduce waist circumference by 4.17 cm and

improve the rectus abdominis muscle by 11%:



41.    Multiple BTL-sponsored clinical studies (the "BTL Studies"), published several

years before Rejuva Fresh even began selling the Accused Devices, demonstrated that successive

treatments with BTL's EMSCULPT device achieved identical or substantively identical results

to those claimed by Rejuva Fresh. *See, e.g.*, Ex. N (David E. Kent & Carolyn I. Jacob,

Simultaneous Changes in Abdominal Adipose and Muscle Tissues Following Treatments by

High-Intensity Focused Electromagnetic (HIFEM) Technology-Based Device: Computed

Tomography Evaluation, 18 J. of Drugs in Dermatology 1098 (2019)) (reporting repeat

EMSCULPT treatments reduced fat by 19%, increased muscle mass by 16%, thickened the

rectus abdominis muscle by 14.8% (+1.5±0.8mm), and reduced waist circumference by 3.9±3.1

cm). On information and belief, Rejuva Fresh never sponsored or conducted any research or

testing of its own to establish that the Accused Devices produced patient results equivalent to

those provided by BTL's EMSCULPT device and reported in the BTL Studies. And Rejuva

Fresh never requested from BTL, nor did BTL give, permission for Rejuva Fresh to use the results of the BTL Studies in connection with its promotion or advertising of the Accused Devices.

42.    As further evidence that Rejuva Fresh, without BTL's knowledge or permission, appropriated the results reported in the BTL Studies to promote the Accused Devices, Rejuva Fresh copied and pasted before-and-after photos from the BTL Studies when referencing these research findings in its promotional materials for the Accused Devices:



Landing Page for EMSLIM Body Sculpting Machine (https://rejuvafresh.com/products/emslim-body-sculpting-machine-with-4-handles)



Ex. M (Kinney Study)



Landing Page for the EMSLIM Body Sculpting Machine

(https://rejuvafresh.com/products/emslim-body-sculpting-machine-with-4-handles)



Ex. N (taken from David E. Kent & Carolyn I. Jacob, Simultaneous Changes in Abdominal

Adipose and Muscle Tissues Following Treatments by High-Intensity Focused Electromagnetic

(HIFEM) Technology-Based Device: Computed Tomography Evaluation, 18 J. of Drugs in

Dermatology 1098 (2019)).

43.     By promoting the Accused Devices as capable of achieving clinical results

identical to those reported with BTL's EMSCULPT device, Rejuva Fresh misrepresented and

continues to misrepresent the quality and performance of these devices and does so in a manner

that has and will likely cause interested consumers to confuse these devices with BTL and BTL's

EMSCULPT device. At least one Rejuva Fresh customer purchased a Rejuva Fresh device believing it was a genuine BTL device.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,266,852

44.    BTL repeats and re-alleges paragraphs 1–43 as if fully set forth herein.

45.    The '852 patent is directed towards devices for treating a patient using time-varying magnetic fields. Exemplary Claim 9 of the '852 patent recites:

A treatment device for enhancing a visual appearance of a patient, the treatment device comprising:

a first magnetic field generating coil and a second magnetic field generating coil, wherein both of the first and second magnetic field generating coils are planar;

a first applicator, wherein the first applicator comprises the first magnetic field generating coil,

wherein the first magnetic field generating coil is configured to generate a first time-varying magnetic field with a repetition rate in a range of 1 Hz to 300 Hz and a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the first magnetic field generating coil,

wherein the second magnetic field generating coil is configured to generate a second time-varying magnetic field with a repetition rate in a range of 1 Hz to 300 Hz and a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the second magnetic field generating coil,

wherein the first magnetic field generating coil is configured to generate the first time-varying magnetic field independently of the second time-varying magnetic field,

wherein each of the first and the second magnetic field generating coils is configured to generate a plurality of pulses,

wherein each of the plurality of pulses comprises a first plurality of pulses having a first

repetition rate and a second plurality of pulses having a second repetition rate,

wherein the first repetition rate differs from the second repetition rate,

wherein each pulse comprises an impulse,

wherein each pulse lasts for a time period lasting from a beginning of a first impulse of

the time-varying magnetic field to a beginning of a next consecutive impulse of

the time-varying magnetic field,

wherein the first and the second magnetic field generating coils are configured to be

placed proximate to a body region of the patient such that the first and the second

time-varying magnetic fields are each applied to the body region to cause a

contraction of at least one muscle in the body region to enhance the visual

appearance of the patient, and

wherein the body region comprises one of a buttocks or an abdomen.

46.     The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine include or perform each and every limitation of at least claim 9 of the '852 patent, either literally or under the doctrine of equivalents.

47.     Rejuva Fresh has and continues to directly infringe, literally or under the doctrine of equivalents, at least claim 9 of the '852 patent by making, using, offering to sell, selling, or importing the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM

28

Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine in the United States.

48.     Rejuva Fresh has induced infringement and continues to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 9 of '852 patent, by encouraging, promoting, and instructing customers to use the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine in a manner that directly infringes at least claim 9 of the '852 patent.

49.     The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine include the preamble of claim 9 of the '852 patent, which recites "[a] treatment device for enhancing a visual appearance of a patient." Promotional materials for these devices advertise and promote these devices for their ability to build muscle and burn fat, thus enhancing the visual appearance of a patient. *See generally* Ex. O (Professional Body Sculpture EMSLIM NEO Machine Brochure); Ex. P (EMSZERO NEO Body Contouring Machine Brochure); Ex. Q (Professional EMSZERO NEO Body Sculpting Machine Brochure); Ex. V (EMSLIM Body Sculpting Machine Manual); Ex. X (Portable EMSZERO NEO Body Contouring Machine Manual); Landing Page for the Personal EMS Sculpting Machine

(https://rejuvafresh.com/products/personal-ems-sculpting-machine); Landing Page for the
Personal EMSZERO NEO Sculpting Machine (https://rejuvafresh.com/products/personal-
emszero-neo-sculpting-machine).

50.     The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO
Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the
EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine,
the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine
include the claimed element "a first magnetic field generating coil and a second magnetic field
generating coil, wherein both of the first and second magnetic field generating coils are planar."
User manuals for these devices represent that the devices come with treatment handles. Ex. R at
4 (Professional Body Sculpture EMSLIM NEO Machine Manual); Ex. S at 2 (EMSZERO NEO
Body Contouring Machine Manual); Ex. T at 3 (Professional EMS ZERO NEO Body Sculpting
Machine Manual); Ex. V at 27 (EMSLIM Body Sculpting Machine Manual); Ex. X at 3
(Portable EMSZERO NEO Body Contouring Machine Manual); Ex. W at 2 (Personal EMS
Sculpting Machine Manual); Ex. U at 3 (Personal EMSZERO NEO Sculpting Machine Manual).
On information and belief, these handles are applicators that house magnetic field generating
coils. The brochure for the Professional Body Sculpture EMSLIM NEO Machine, for example,
represents on page 2 that the device's applicators "simultaneously emit[] synchronized RF and
High Intensity Focused Electro-Magnetic energies." Ex. O at 3 (Professional Body Sculpture
EMSLIM NEO Machine Brochure); *see also* Ex. Q at 3 (Professional EMSZERO NEO Body
Sculpting Machine Brochure) ("2 handles or 4 handles simultaneously"). It also depicts an image
of one of the device's applicators generating what appears to be a series of magnetic pulses:



Ex. O at 3 (Professional Body Sculpture EMSLIM NEO Machine Brochure); *see also* Ex. Q at 3

(Professional EMSZERO NEO Body Sculpting Machine Brochure); Ex. P at 3 (EMSZERO

NEO Body Contouring Machine Brochure); Ex. V at 5 (EMSLIM Body Sculpting Machine

Manual); Landing Page for the Portable EMSZERO NEO Body Contouring Machine

(https://rejuvafresh.com/products/portable-emszero-neo-body-contouring-machine); Landing

Page for the Personal EMS Sculpting Machine (https://rejuvafresh.com/products/personal-ems-

sculpting-machine); Landing Page for the Personal EMSZERO NEO Sculpting Machine

(https://rejuvafresh.com/products/personal-emszero-neo-sculpting-machine).

     51.     On information and belief, a reasonable opportunity for further investigation or

discovery will show that the first and second magnetic field generating coils of the Professional

Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the

Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine,

the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine are in a planar position within their respective applicators.

52.     The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine include the claimed element "a first applicator, wherein the first applicator comprises the first magnetic field generating coil" for the same reasons stated in paragraph 50.

53.     The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine include the claimed element "wherein the first magnetic field generating coil is configured to generate a first time-varying magnetic field with a repetition rate in a range of 1 Hz to 300 Hz and a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the first magnetic field generating coil." The specifications in the brochures for the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, and the Professional EMSZERO NEO Body Sculpting Machine represent that the devices can generate a magnetic flux density between 0.1 to 7 Tesla and a repetition rate of 1 Hz to 150 Hz. Ex. O at 11 (Professional Body Sculpture EMSLIM NEO Machine Brochure); Ex. Q at 2 (Professional EMSZERO NEO Body Sculpting Machine Brochure); Ex. P at 2 (EMSZERO NEO Body Contouring Machine); Landing Page for the EMSLIM Body Sculpting Machine

32

(https://rejuvafresh.com/products/emslim-body-sculpting-machine-with-2-handles); Landing Page for the Portable EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/portable-emszero-neo-body-contouring-machine); Landing Page for the Personal EMS Sculpting Machine (https://rejuvafresh.com/products/personal-ems-sculpting-machine); Landing Page for the Personal EMSZERO NEO Sculpting Machine (https://rejuvafresh.com/products/personal-emszero-neo-sculpting-machine).

54.     The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine include the claimed element "wherein the second magnetic field generating coil is configured to generate a second time-varying magnetic field with a repetition rate in a range of 1 Hz to 150 Hz and a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the second magnetic field generating coil" for the same reasons stated in paragraph 53.

55.     The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine include the claimed element "wherein the first magnetic field generating coil is configured to generate the first time-varying magnetic field independently of the second time-varying magnetic field." On information and belief, the first and second magnetic field generating coils housed within the first and second applicators of the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO

Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO

Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO

NEO Sculpting Machine are configured to generate time-varying magnetic fields independently

of one another. Promotional materials for the devices represent that the devices' applicators work

simultaneously. Ex. O at 2 (Professional Body Sculpture EMSLIM NEO Machine Brochure);

Ex. Q at 2 (Professional EMSZERO NEO Body Sculpting Machine Brochure); Ex. P at 2

(EMSZERO NEO Body Contouring Machine Brochure); *see also* Ex. S at 8 (EMSZERO NEO

Body Contouring Machine Manual) ("When the intensity1[sic] is pulled to the lowest value . . .

the B handle works alone."); Ex. T at 13 (Professional EMSZERO NEO Body Sculpting

Machine Manual) ("The HANDLES A are controlled together by a single switch. HANDLES B

are controlled together by a separate single switch."). Furthermore, the manual for the

Professional Body Sculpture EMSLIM NEO Machine, on page 16, depicts an image of the

device's user interface, which shows four applicators on the left of the user interface. On the

right are two sliding scales, which separately correspond to the first and second applicators and

separately determine the "Energy Setting" for each of the applicators:



Ex. R at 16 (Professional Body Sculpture EMSLIM NEO Machine Manual); *see also* Ex. S at 4-

12 (EMSZERO NEO Body Contouring Machine Manual) (depicting user interface with separate

sliding scales for each applicator); Ex. T at 11 (Profesional EMSZERO NEO Body Sculpting

Machine Manual) (same); Ex. V at 30 (EMSLIM Body Sculpting Machine Manual) (same); Ex.

X at 13 (Portable EMSZERO NEO Body Contouring Machine Manual) (same); Ex. W at 3-4

(Personal EMS Sculpting Machine Manual); Ex. U at 11 (Personal EMSZERO NEO Sculpting

Machine Manual) (same).

56.     The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO

Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the

EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine,

the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine

include the claimed element "wherein each of the first and the second magnetic field generating

coils is configured to generate a plurality of pulses." For example, the brochure for the

Professional Body Sculpture EMSLIM NEO Machine depicts an image of one of the device's

applicators generating what appears to be a series of magnetic pulses. Ex. O at 3 (Professional

Body Sculpture EMSLIM NEO Machine Brochure); *see also* Ex. Q at 3 (Professional

EMSZERO NEO Body Sculpting Machine Brochure); Ex. P at 3 (EMSZERO NEO Body

Contouring Machine Brochure); Ex. V at 5 (EMSLIM Body Sculpting Machine Manual);

Landing Page for the Portable EMSZERO NEO Body Contouring Machine

(https://rejuvafresh.com/products/portable-emszero-neo-body-contouring-machine); Landing

Page for the Personal EMS Sculpting Machine (https://rejuvafresh.com/products/personal-ems-

sculpting-machine); Landing Page for the Personal EMSZERO NEO Sculpting Machine

(https://rejuvafresh.com/products/personal-emszero-neo-sculpting-machine).

57.    The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine include the claimed element "wherein each of the plurality of pulses comprises a first plurality of pulses having a first repetition rate and a second plurality of pulses having a  second repetition rate, wherein the first repetition rate differs from the second repetition rate." On information and belief, the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine are configured to generate magnetic pulses at several different frequencies depending on the treatment phase. For example, the manual for the Professional Body Sculpture EMSLIM NEO Machine, on page 16, depicts a "Frequency Setting" feature with several sliding scales that, on information and belief, represent different frequencies that correspond to different phases of a single treatment:



Ex. R at 16 (Professional Body Sculpture EMSLIM NEO Machine Manual) *see also* Ex. S at 4-12 (EMSZERO NEO Body Contouring Machine Manual); Ex. T at 11 (Professional EMSZERO NEO Body Sculpting Machine Manual); Ex. V at 30 (EMSLIM Body Sculpting Machine Manual) ("Use 6 different frequency combination modes to ensure the highest clinical efficacy."); Ex. X at 13-15 (Portable EMSZERO NEO Body Contouring Machine Manual) (describing different treatment modes); Ex. W at 3-5 (Personal EMS Sculpting Machine Manual) (describing how to configure two different treatment modes); Ex. U at 11-13 (Personal EMSZERO NEO Sculpting Machine Manual) (describing different treatment modes).

58.    The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine include the claimed element "wherein each pulse comprises an impulse." On information and

belief, a reasonable opportunity for further investigation and discovery will show that the

applicators for the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO

Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the

EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine,

the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine

generate a plurality of magnetic pulses that contract the muscles of a targeted body region, which

is followed by a rest period to allow for the muscles to relax. For example, the brochure for the

Professional Body Sculpture EMSLIM NEO Machine states that the device "uses a specific

range of frequencies that does not allow muscle relaxation between two consecutive simulations.

The muscle is forced to remain in contracted state for multiple seconds." Ex. O at 4 (Professional

Body Sculpture EMSLIM NEO Machine Brochure); *see also* Ex. S at 7 (EMSZERO NEO Body

Contouring Machine Manual) ("When the customer requests to pause, they can click the

start/pause work button to pause the work . . . they can directly click the return key to return.");

Ex. T at 9 (Professional EMSZERO NEO Body Sculpting Machine) (depicting user interface

with "START/PAUSE" button); Ex. V at 30 (EMSLIM Body Sculpting Machine Manual)

(same); Ex. X at 9 (Portable EMSZERO NEO Body Contouring Machine Manual) (same); Ex.

W at 4 (Personal EMS Sculpting Machine Manual) (same); Ex. U at 9 (Personal EMSZERO

NEO Sculpting Machine Manual) (same).

     59.    The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO

Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the

EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine,

the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine

include the claimed element "wherein each pulse lasts for a time period lasting from a beginning

of a first impulse of the time-varying magnetic field to a beginning of a next consecutive impulse of the time-varying magnetic field" for the same reasons stated in paragraph 55.

60.    The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine include the claimed element "wherein the first and the second magnetic field generating coils are configured to be placed proximate to a body region of the patient such that the first and the second time-varying magnetic fields are each applied to the body region to cause a contraction of at least one muscle in the body region to enhance the visual appearance of the patient." The brochure for the Professional Body Sculpture EMSLIM NEO Machine, for example, states on page 5 that the device "works on the abdomen area contracting and tightening the muscles," which "can help you improve the muscle definition." Ex. O at 6 (Professional Body Sculpture EMSLIM NEO Machine Brochure); *see also* Landing Page for the EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/emszero-neo-body-contouring-machine) ("This latest super-intense magnetic wave technology stimulates approximately 20,000 forced muscle contractions per 30 minute treatment session."); Landing Page for the Professional EMSZERO NEO Sculpting Machine (https://rejuvafresh.com/products/premium-emszero-neo-body-sculpting-machine) (same); Landing Page for the EMSLIM Body Sculpting Machine (https://rejuvafresh.com/products/emslim-body-sculpting-machine-with-2-handles) ("The waves act on the muscle motor neural network in the brain to trigger continuous very strong muscle contraction[s]."); Landing Page for the Portable EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/portable-emszero-neo-body-contouring-machine ) ("The

technology stimulates approximately 20,000 forced muscle contractions."); Landing Page for the Personal EMS Sculpting Machine (https://rejuvafresh.com/products/portable-emszero-neo-body-contouring-machine) ("The machine uses high intensity focused electromagnetic technology to continuously expand and contract the muscles."); Landing Page for the Personal EMSZERO NEO Sculpting Machine (https://rejuvafresh.com/products/personal-emszero-neo-sculpting-machine) (representing the device induces 20,000 muscle contractions in a single treatment session). The manual for the Professional Body Sculpture EMSLIM NEO Machine, on page 17, depicts both of the device's applicators positioned on a patient's abdomen. Ex. R at 17 (Professional Body Sculpture EMSLIM NEO Machine Manual). Moreover, the brochures for the EMSZERO NEO Body Contouring Machine, and the Professional EMSZERO NEO Body Sculpting Machine include before-and-after photos of patients' abdomens. *See* Ex. Q at 2 (Professional EMSZERO NEO Body Sculpting Machine Brochure); Ex. P at 3 (EMSZERO NEO Body Contouring Machine Brochure).

61.     The Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, and the Personal EMSZERO NEO Sculpting Machine include the claimed element "wherein the body region comprises one of a buttocks or an abdomen." Promotional and informational materials for these devices represent that buttocks or abdomen are the intended treatment areas. Ex. O at 5 (Professional Body Sculpture EMSLIM NEO Machine Brochure); Ex. P at 2 (EMSZERO NEO Body Contouring Machine Brochure); Ex. T at 13 (Professional EMSZERO NEO Body Sculpting Machine Brochure); Ex. V at 4 (EMSLIM Body Sculpting Machine Manual); Ex. X at 2 (Portable EMSZERO NEO Body

Contouring Machine Manual); Landing Page for the Personal EMS Sculpting Machine

(https://rejuvafresh.com/products/portable-emszero-neo-body-contouring-machine) (depicting

photos of applicators positioned on patients' abdomen and buttocks); Landing Page for the

Personal EMSZERO NEO Sculpting Machine Manual

(https://rejuvafresh.com/products/personal-emszero-neo-sculpting-machine ) (same).

62.     Rejuva Fresh's direct infringement of the '852 patent has been, and continues to

be, willful. On information and belief, Rejuva Fresh has been aware of the '852 patent since

before the filing of this Complaint and has infringed the '852 patent willfully and deliberately

and with knowledge that such conduct violates 35 U.S.C. § 271.

63.     Rejuva Fresh's infringement of the '852 patent has damaged, and continues to

damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost

profits that BTL would have made but for Rejuva Fresh's infringing acts as provided by 35

U.S.C. § 284.

64.     BTL will suffer irreparable harm unless Rejuva Fresh is enjoined from infringing

the '852 patent.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,695,575

65.     BTL repeats and re-alleges paragraphs 1-43 as if fully set forth herein.

66.     The '575 patent is directed toward methods for toning muscles in a patient using

time-varying magnetic fields. Exemplary Claim 1 of the patent recites:

A method for toning muscles of a patient, comprising:

positioning a first applicator on the patient, the first applicator housing a first magnetic

field generating coil having an inductance;

41

independently positioning a second applicator on the patient, the second applicator

housing a second magnetic field generating coil having the same inductance as the

first magnetic field generating coil;

charging a first energy storage device and a second energy storage device;

discharging the first energy storage device to the first magnetic field generating coil such

that a first impulse of a first time-varying magnetic field is generated;

discharging the second energy storage device to the second magnetic field generating coil

such that a first impulse of a second time-varying magnetic field is generated,

wherein the first impulse of the first time-varying magnetic field and the first impulse of

the second time-varying magnetic field each have a magnetic flux density in a

range between 0.1 Tesla and 7 Tesla, and wherein the first impulse of the first

time-varying magnetic field and the first impulse of the second time-varying

magnetic field each have an impulse duration in a range between 3 $\mu$s and 3 ms;

establishing a first pulse duration beginning at the beginning of the first impulse

generated by the first magnetic field generating coil and ending at the beginning

of a second impulse generated by the first magnetic field generating coil, wherein

the first impulse generated by the second magnetic field generating coil is

generated during the first pulse duration;

cooling each of the first and the second magnetic field generating coils; and

applying a first plurality of impulses generated by the first magnetic field generating coil

and applying a second plurality of impulses generated by the second magnetic

field generating coil, to muscle fibers, neuromuscular plates, or nerves innervating

muscle fibers in a body region of the patient to cause muscles of the body region to contract such that the muscles are toned.

67.    Rejuva Fresh has induced infringement and continues to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '575 patent by making, using, offering to sell, selling, or importing the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring Machine in the United States and by encouraging, promoting, and instructing customers to use these devices in a manner that directly infringe at least claim 1 of the '575 patent.

68.    Rejuva Fresh has and continues to encourage, promote, and instruct customers to perform the preamble of claim 1 of the '575 patent, which recites "a method for toning muscles of a patient." Rejuva Fresh advertises and promotes the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring Machine as devices capable of toning a patient's muscles. Ex. O at 7 (Professional Body Sculpture EMSLIM NEO Machine Brochure); Ex. P at 3 (EMSZERO NEO Body Contouring Machine); Ex. Q at 3 (Professional EMSZERO NEO Body Sculpting Machine); Ex. X at 2 (Portable EMSZERO NEO Body Contouring Machine Manual).

69.    Rejuva Fresh has and continues to encourage, promote, and instruct customers to perform the claimed step of "positioning a first applicator on the patient, the first applicator housing a first magnetic field generating coil having an inductance." The applicators for the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, and the Portable

EMSZERO NEO Body Contouring Machine house magnetic field generating coils having an inductance for the same reasons stated in paragraphs 50-52. On information and belief, Rejuva Fresh has and continues to encourage, promote, and instruct customers to position these applicators on a patient. The manual for the Professional Body Sculpture EMSLIM NEO Machine, for example, on page 17, instructs customers to "stick the handle vertically close to the treatment area," and depicts a patient with two of the device's applicators positioned on his abdomen. *See* Ex. R at 17 (Professional Body Sculpture EMSLIM NEO Machine Manual). With respect to the EMSZERO NEO Body Contouring Machine, the manual for this device instructs customers, on page 4, to "take out the handle from the handle frame before operation, and use the belt to fix the handle to the operating part required by the customer." Ex. S at 4 (EMSZERO NEO Body Contouring Machine Manual). With regards to the Professional EMSZERO NEO Body Sculpting Machine, the manual for the device, on page 13, instructs customers to "[u]se the belt to fix the handle to the body part being treated." Ex. T at 9 (Professional EMSZERO NEO Body Sculpting Machine Manual). As for the Portable EMSZERO NEO Body Contouring Machine, the manual for the device, on page 13, likewise instructs customers to "[u]se the belt to fix the handle to the body part being treated." Ex. X at 9 (Portable EMSZERO NEO Body Contouring Machine Manual).

70.    Rejuva Fresh has and continues to encourage, promote, and instruct customers to perform the claimed step of "independently positioning a second applicator on the patient, the second applicator housing a second magnetic field generating coil having the same inductance as the first magnetic field generating coil" for the same reasons stated in paragraph 69.

71.    Rejuva Fresh has and continues to encourage, promote, and instruct customers to perform the claimed step of "charging a first energy storage device and a second energy storage

device." On information and belief, a reasonable opportunity for further investigation or discovery will show that the first and second applicators of the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring Machine require separate energy storage devices to generate their respective electromagnetic fields, and that these storage devices must be charged prior to transferring energy to their corresponding applicators. The manual for the Professional Body Sculpture EMSLIM NEO Machine, on page 4, depicts an image showing the back of the device, which shows that the device's applicator has unique sockets connecting to the main body of the device. Ex. R at 4 (Professional Body Sculpture EMSLIM NEO Machine Manual). The manual further states, on page 21, that if the device does not start users should "[c]heck the power supply has electricity and the attaching plugs are securely inserted both ends and socket is switched on." *Id.* at 21 (Professional Body Sculpture EMSLIM NEO Machine Manual). The manuals for the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring Machine also include images depicting the back of the devices, which have unique sockets connecting to the main body of the device. *See, e.g.*, Ex. S at 2 (EMSZERO NEO Body Contouring Machine Manual); Ex. T at 4 (Professional EMSZERO NEO Body Sculpting Machine Manual); Ex. X at 4 (Portable EMSZERO NEO Body Contouring Machine Manual). On information and belief, Rejuva Fresh has and continues to encourage, promote, and instruct customers to charge the energy storage devices. The manual for the Professional Body Sculpture EMSLIM NEO Machine, on page 17, instructs users to "[t]urn on the machine and select the mode you need and adjust the parameters." Ex. R at 17 (Professional Body Sculpture EMSLIM NEO Machine Manual). The

manuals for the EMSZERO NEO Body Contouring Machine and the Professional EMSZERO
NEO Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring Machine
similarly tell customers where the power switch is located on the devices, *see, e.g.*, Ex. S at 2
(EMSZERO NEO Body Contouring Machine Manual); Ex. T at 4 (Professional EMSZERO
NEO Body Sculpting Machine Manual); Ex. X at 4 (Portable EMSZERO NEO Body Contouring
Machine Manual), and provide step-by-step guidance to customers on how to turn on and use the
devices, *see* Ex. S at 4-12 (EMSZERO NEO Body Contouring Machine Manual); Ex. T at 9-12
(Professional EMSZERO NEO Body Sculpting Machine Manual); Ex. X at 9-12 (Portable
EMSZERO NEO Body Contouring Machine Manual).

72.     Rejuva Fresh has and continues to encourage, promote, and instruct customers to
perform the claimed step of "discharging the first energy storage device to the first magnetic
field generating coil such that a first impulse of a first time-varying magnetic field is generated."
On information and belief, the applicators for the Professional Body Sculpture EMSLIM NEO
Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO
Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring Machine house
magnetic field generating coils, which have corresponding energy storage devices, for the same
reasons stated in paragraphs 50-52. On information and belief, Rejuva Fresh has and continues to
encourage, promote, and instruct customers to discharge the first energy storage device to the
first magnetic field generating coil, generating a time-varying magnetic field. For example, after
instructing users to turn on the device and position the applicators on a patient's targeted body
region, the manual for the Professional Body Sculpture EMSLIM NEO Machine, on page 17,
instructs users to "press the work button to operate." Ex. R at 17 (Professional EMSLIM NEO
Body Sculpture Machine Manual).

73.    Rejuva Fresh has and continues to encourage, promote, and instruct customers to perform the claimed step of "discharging the second energy storage device to the second magnetic field generating coil such that a first impulse of a second time-varying magnetic field is generated" for the same reasons stated in paragraph 72.

74.    Rejuva Fresh has and continues to encourage, promote, and instruct customers to perform the claimed step "wherein the first impulse of the first time-varying magnetic field and the first impulse of the second time-varying magnetic field each have a magnetic flux density in a range between 0.1 Tesla and 7 Tesla, and wherein the first impulse of the first time-varying magnetic field and the first impulse of the second time-varying magnetic field each have an impulse duration in a range between 3 μs and 3 ms." The applicators for the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring Machine generate a magnetic flux density in a range between 0.1 Tesla and 7 Tesla for the same reasons stated in paragraph 53. Furthermore, the brochure for the Professional Body Sculpture EMSLIM NEO Machine, for example, represents that the device generates a "Pulse width" of 310μs±10%. Ex. O at 11 (Professional Body Sculpture EMSLIM NEO Machine Brochure). On information and belief, a reasonable opportunity for further investigation or discovery will show that the magnetic fields generated by the applicators of EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring Machine have an impulse duration in a range between 3 μs and 3 ms. Promotional materials for these devices, for example, represent that the devices are capable of inducing 20,000 muscle contractions in a 30 minute treatment session. Landing Page for Professional EMSZERO NEO Body Sculpting Machine

(https://rejuvafresh.com/products/premium-emszero-neo-body-sculpting-machine); Landing

Page for EMSZERO NEO Body Contouring Machine

(https://rejuvafresh.com/products/emszero-neo-body-contouring-machine ); Landing Page for the

Portable EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/portable-

emszero-neo-body-contouring-machine). On information and belief, achieving this number of

muscle contractions in a 30-minute session means it is likely that the applicators for these

devices generate impulses that last between 3 microseconds and 3 milliseconds.

75.      Rejuva Fresh has and continues to encourage, promote, and instruct customers to

perform the claimed step of "establishing a first pulse duration beginning at the beginning of the

first impulse generated by the first magnetic field generating coil and ending at the beginning of

a second impulse generated by the first magnetic field generating coil, wherein the first impulse

generated by the second magnetic field generating coil is generated during the first pulse

duration." On information and belief, the applicators of the Professional Body Sculpture

EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional

EMSZERO NEO Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring

Machine generate magnetic fields independently and simultaneously for the same reasons stated

in paragraph 55. On information and belief, Rejuva Fresh has and continues to encourage,

promote, and instruct customers to use the applicators of these devices independently and

simultaneously.

76.      Rejuva Fresh has and continues to encourage, promote, and instruct customers to

perform the claimed step of "cooling each of the first and the second magnetic field generating

coils." On information and belief, the Professional Body Sculpture EMSLIM NEO Machine, the

EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting

Machine, and the Portable EMSZERO NEO Body Contouring Machine include air cooling systems that cool the magnetic field generating coils within the applicators of these devices. The brochures and landing pages for these devices represent that these devices are configured with air cooling systems. *See infra* ¶ 105. On information and belief, Rejuva Fresh instructs customers to use the cooling systems of these devices to cool the magnetic field generating coils.

77.     Rejuva Fresh has and continues to encourage, promote, and instruct customers to perform the claimed step of "applying a first plurality of impulses generated by the first magnetic field generating coil and applying a second plurality of impulses generated by the second magnetic field generating coil, to muscle fibers, neuromuscular plates, or nerves innervating muscle fibers in a body region of the patient to cause muscles of the body region to contract such that the muscles are toned." The applicators for the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring Machine contain magnetic field generating coils, and generate pluralities of electromagnetic impulses, for the same reasons stated in paragraphs 50-52. On information and belief, Rejuva Fresh has and continues to encourage, promote, and instruct customers to use these devices in a manner that induces muscle contractions in a patient's targeted body region. The landing page for the Professional Body Sculpture EMSLIM NEO Machine, for example, states that the device "works very well on the abdomen area, contracting and tightening the muscles to both burn fat and sculpt the abdominal muscles." Landing Page for Professional Body Sculpture EMSLIM NEO Machine (https://rejuvafresh.com/products/emslim-neo-body-sculpture-machine); *see also* Landing Page for EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/emszero-neo-body-contouring-machine); Landing Page for

Professional EMSZERO NEO Body Sculpting Machine

(https://rejuvafresh.com/products/premium-emszero-neo-body-sculpting-machine); Landing

Page for the Portable EMSZERO NEO Body Contouring Machine

(https://rejuvafresh.com/products/personal-emszero-neo-sculpting-machine) (depicting images of

applicators positioned on patients' abdomens).

78.     Rejuva Fresh has induced infringement and continues to induce direct

infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '575 patent

by making, using, offering to sell, selling, or importing at least the Professional Body Sculpture

EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional

EMSZERO NEO Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring

Machine in the United States and by encouraging customers to use the device in a manner that

directly infringes the '575 patent. On information and belief, Rejuva Fresh was aware of the '575

patent since before the filing of this Complaint. On information and belief, Rejuva Fresh has

known that at least the Professional Body Sculpture EMSLIM NEO Machine, the EMSZERO

NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine,

and the Portable EMSZERO NEO Body Contouring Machine are designed for a use that

infringes one or more claims of the '575 patent, and that the Professional Body Sculpture

EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, the Professional

EMSZERO NEO Body Sculpting Machine, and the Portable EMSZERO NEO Body Contouring

Machine lack a substantial non-infringing use. On information and belief, Rejuva Fresh has, and

will continue to, intentionally encourage acts of direct infringement with knowledge of the '575

patent and knowledge that its acts are encouraging infringement.

79.    Rejuva Fresh's indirect infringement of the '575 patent has been, and continues to be, willful. On information and belief, Rejuva Fresh has been aware of the '575 patent since before the filing of this Complaint and has infringed the '575 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

80.    Rejuva Fresh's indirect infringement of the '575 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Rejuva Fresh's infringing acts as provided by 35 U.S.C. § 284.

81.    BTL will suffer irreparable harm unless Rejuva Fresh is enjoined from infringing the '575 patent.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 10,478,634

82.    BTL repeats and re-alleges paragraphs 1-43 as if fully set forth herein.

83.    The '634 patent is directed towards a method for toning muscles in a patient using time-varying magnetic fields. Exemplary Claim 1 of the patent recites:

A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:

placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;

coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing;

providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field; and

applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region,

wherein the time-varying magnetic field is applied to the body region with a magnetic

flux density sufficient to cause a muscle contraction in the body region.

84.     Rejuva Fresh has induced infringement and continues to induce direct

infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '634 patent

by making, using, offering to sell, selling, or importing the Accused Devices in the United States

and by encouraging, promoting, and instructing customers to use at least these devices in a

manner that directly infringes at least claim 1 the '634 patent.

85.     Rejuva Fresh has and continues to encourage, promote, and instruct customers to

perform the preamble of claim 1 of the '634 patent, which recites "[a] method for toning muscles

in a patient using time-varying magnetic fields." The user manuals and landing pages for the

Accused Devices encourage, promote, or instruct customers to use the devices in a manner that

tones a patient's muscles using time-varying magnetic fields.

86.      Rejuva Fresh has and continues to encourage, promote, and instruct customers to

perform the claimed step of "placing a first applicator comprising a magnetic field generating

coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body

region is an abdomen or a buttock."  On information and belief, the Accused Devices include at

least one applicator comprising a magnetic field generating coil. The Professional Body

Sculpture EMSLIM NEO Machine, the EMSZERO NEO Body Contouring Machine, and the

Professional EMSZERO NEO Body Sculpting Machine include at least one applicator

comprising a magnetic field generating coil for the same reasons stated in paragraphs 50-52. The

manuals and landing pages for the remaining Accused Devices represent that the devices come

with at least one treatment handle. Ex. J at 4 (EMSLIM NEO for Home Use Manual); Ex. L at 6

(Mini EMSLIM Body Sculpting Machine Manual); Ex. K at 6 (Mini EMSLIM NEO Body

Sculpting Machine Manual); Ex. U at 3 (Personal EMSZERO NEO Sculpting Machine Manual);

Ex. V at 27 (EMSLIM Body Sculpting Machine Manual); Ex. W at 2 (Personal EMS Sculpting

Machine Manual); Ex. X at 3 (Portable EMSZERO NEO Body Contouring Machine Manual).

These materials further represent that these handles are applicators that house magnetic field

generating coils by including promotional or informational language and images, which

represent that the applicators generate magnetic waves. *See* Ex. J at 3 (EMSLIM NEO for Home

Use Manual); Ex. L at 5 (Mini EMSLIM Body Sculpting Machine Manual); Ex. K at 3-5 (Mini

EMSLIM NEO Body Sculpting Machine Manual); Ex. U at 11 (Personal EMSZERO NEO

Sculpting Machine Manual); Ex. V at 3-5 (EMSLIM Body Sculpting Machine Manual); Ex. W

at 3-4 (Personal EMS Sculpting Machine Manual); Landing Page for Portable EMSZERO NEO

Body Contouring Machine (https://rejuvafresh.com/products/portable-emszero-neo-body-

contouring-machine). Rejuva Fresh also encourages and instructs users to place these applicators

on the skin of a patient's abdomen or buttocks or over clothing covering these body regions. The

manuals, brochures, and landing pages for the Accused Devices depict or describe the

applicators as positioned on various body regions including the abdomen or buttock. Ex. O at 5-7

(Professional Body Sculpture EMSLIM NEO Machine Brochure); Ex. P at 2 (EMSZERO NEO

Body Contouring Machine Brochure); Ex. Q at 2 (Professional EMSZERO NEO Body Sculpting

Machine Brochure); Ex. J at 3 (EMSLIM NEO for Home Use Manual); Ex. L at 8 (Mini

EMSLIM Body Sculpting Machine Manual); Ex. K at 6 (Mini EMSLIM NEO Body Sculpting

Machine Manual); Landing Page for Personal EMSZERO NEO Sculpting Machine

(https://rejuvafresh.com/products/personal-emszero-neo-sculpting-machine); Ex. V at 37

(EMSLIM Body Sculpting Machine Manual); Landing Page for Personal EMS Sculpting

Machine (https://rejuvafresh.com/products/personal-ems-sculpting-machine); Landing Page for

Portable EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/portable-emszero-neo-body-contouring-machine).

87.    Rejuva Fresh has and continues to encourage, promote, and instruct customers to perform the claimed step of "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing." The manuals, brochures, and landing pages for the Accused Devices represent that the devices come with elastic and length-adjustable belts that fasten the applicator to a patient's body region. Ex. O at 6-7 (Professional Body Sculpture EMSLIM NEO Machine Brochure); Landing Page for EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/emszero-neo-body-contouring-machine); Landing Page for Professional EMSZERO NEO Body Sculpting Machine (https://rejuvafresh.com/products/premium-emszero-neo-body-sculpting-machine); Ex. L at 8 (Mini EMSLIM Body Sculpting Machine Manual); Ex. K at 6 (Mini EMSLIM NEO Body Sculpting Machine Manual); Ex. U at 3 (Personal EMSZERO NEO Sculpting Machine Manual); Ex. V at 27 (EMSLIM Body Sculpting Machine Manual); Ex. W at 2 (Personal EMS Sculpting Machine Manual); Ex. X at 3 (Portable EMSZERO NEO Body Contouring Machine Manual).[2]

88.    Rejuva Fresh has and continues to encourage, promote, and instruct customers to perform the claimed step of "providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field." On information and belief, the Accused Devices include power supplies which transmit energy to the applicators, which in turn generate time-varying magnetic fields. The manuals, brochures, and landing pages for the Accused Devices, for example, reference power supplies or power chords that connect to a power supply, which, on

---

[2] On information and belief, a reasonable opportunity for further investigation and discovery will show that the EMSLIM NEO for Home Use includes at least one adjustable belt.

information and belief, supply power to the applicators so they may generate time-varying magnetic fields. Ex. R at 4 (Professional Body Sculpture EMSLIM NEO Machine Manual); Ex. S at 2 (EMSZERO NEO Body Contouring Machine Manual); Ex. T at 3 (Professional EMSZERO NEO Body Sculpting Machine Manual); Ex. J at 8 (EMSLIM NEO for Home Use Manual); Ex. L at 6 (Mini EMSLIM Body Sculpting Machine Manual); Ex. K at 12 (Mini EMSLIM NEO Body Sculpting Machine Manual); Ex. U at 3 (Personal EMSZERO NEO Sculpting Machine Manual); Ex. V at 24 (EMSLIM Body Sculpting Machine Manual); Ex. W at 2 (Personal EMS Sculpting Machine Manual); Ex. X at 3 (Portable EMSZERO NEO Body Contouring Machine Manual).

89.    Rejuva Fresh has and continues to encourage, promote, and instruct customers to perform the claimed step of "applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region." On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Devices generate and deliver magnetic fields that vary in area density depending on the treatment mode and parameters. The manuals, brochures, and landing pages for the Accused Devices, for example, represent that the devices are configured to follow multiple different treatment modes or parameters. Ex. R at 15-16 (Professional Body Sculpture EMSLIM NEO Machine Manual); Ex. S at 4-12 (EMSZERO NEO Body Contouring Machine Manual); Ex. T at 10-12 (Professional EMSZERO NEO Body Sculpting Machine Manual); Ex. J at 6 (EMSLIM NEO for Home Use Manual); Ex. L at 12 (Mini EMSLIM Body Sculpting Machine Manual); Ex. K at 9 (Mini EMSLIM NEO Body Sculpting Machine Manual); Ex. U at 9-12 (Personal EMSZERO NEO Sculpting Machine Manual); Ex. V at 28 (EMSLIM Body Sculpting Machine Manual); Ex. W at 3-4 (Personal EMS Sculpting Machine Manual); Ex. X at 9-12 (Portable EMSZERO NEO Body Contouring Machine Manual).

90.     Rejuva Fresh has and continues to encourage, promote, and instruct customers to perform the claimed step "wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region." The manuals, brochures, and landing pages for the Accused Devices promote and advertise the Accused Devices' ability to generate magnetic fields sufficient to cause muscle contractions in the targeted body region. Ex. O at 4 (Professional Body Sculpture EMSLIM NEO Machine Brochure); Landing Page for EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/emszero-neo-body-contouring-machine); Ex. Q at 2 (Professional EMSZERO NEO Body Sculpting Machine Brochure); Ex. J at 3 (EMSLIM NEO for Home Use Manual); Ex. L at 3 (Mini EMSLIM Body Sculpting Machine Manual); Ex. K at 16 (Mini EMSLIM NEO Body Sculpting Machine Manual); Ex. U at 1 (Personal EMSZERO NEO Sculpting Machine Manual); Ex. V at 3-5 (EMSLIM Body Sculpting Machine Manual); Landing Page for Personal EMS Sculpting Machine (https://rejuvafresh.com/products/personal-ems-sculpting-machine); Ex. X at 1 (Portable EMSZERO NEO Body Contouring Machine Manual).

91.     Rejuva Fresh has induced infringement and continues to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '634 patent by making, using, offering to sell, selling, or importing at least the Accused Devices in the United States and by encouraging customers to use at least the Accused Devices in a manner that directly infringes at least claim 1 of the '634 patent. On information and belief, Rejuva Fresh was aware of the '634 patent since before the filing of this Complaint. On information and belief, Rejuva Fresh has known that the Accused Devices are designed for a use that infringes one or more claims of the '634 patent, and the Accused Devices lack a substantial non-infringing use.

56

On information and belief, Rejuva Fresh has, and will continue to, intentionally encourage acts of direct infringement with knowledge of the '634 patent and knowledge that its acts are encouraging infringement.

92.     Rejuva Fresh's indirect infringement of the '634 patent has been, and continues to be, willful. On information and belief, Rejuva Fresh has been aware of the '634 patent before the filing of this Complaint and has infringed the '634 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

93.     Rejuva Fresh's indirect infringement of the '634 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Rejuva Fresh's infringing acts as provided by 35 U.S.C. § 284.

94.     BTL will suffer irreparable harm unless Rejuva Fresh is enjoined from infringing the '634 patent.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,636,519

95.     BTL repeats and re-alleges paragraphs 1-43 as if fully set forth herein.

96.     The '519 patent is directed towards a device for producing a time varying magnetic field for treatment. Exemplary Claim 1 of the '519 patent recites:

A magnetic stimulation device producing a time varying magnetic field for treatment, comprising:

a connection to an energy source, a switch, a coil, an energy storage device, at least one blower and a casing;

with the blower arranged on a circumference of the coil; and

wherein the coil and the casing are arranged in a manner that fluid can flow in-between

them and wherein the coil is cooled by fluid flow over at least upper and lower

sides of the coil.

97.    The Accused Devices include or perform each and every limitation of at least

claim 1 of the '519 patent, either literally or under the doctrine of equivalents.

98.    Rejuva Fresh has and continues to directly infringe, literally or under the doctrine

of equivalents, at least claim 1 of the '519 patent by making, using, offering to sell, selling, or

importing the Accused Devices in the United States.

99.    Rejuva Fresh has induced infringement and continues to induce direct

infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '519 patent,

by encouraging, promoting, and instructing customers to use the Accused Devices in a manner

that directly infringes at least claim 1 of the '519 patent.

100.    The Accused Devices include the preamble of claim 1 of the '519 patent, which

recites "[a] magnetic stimulation device producing a time varying magnetic field for treatment."

The landing pages for these devices represent that the devices generate magnetic fields. Landing

Page for the Personal EMSZERO NEO Sculpting Machine

(https://rejuvafresh.com/products/personal-emszero-neo-sculpting-machine ); Landing Page for

the Mini EMSLIM NEO Body Sculpting Machine (https://rejuvafresh.com/products/emslim-neo-

rf-machine); Landing Page for the Mini EMSLIM Body Sculpting Machine

(https://rejuvafresh.com/products/mini-emslim-body-sculpting-machine); Landing Page for the

EMSLIM Body Sculpting Machine (https://rejuvafresh.com/products/emslim-body-sculpting-

machine-with-4-handles); Landing Page for the EMSZERO NEO Body Contouring Machine

(https://rejuvafresh.com/products/emszero-neo-body-contouring-machine); Landing Page for the

Professional EMSZERO NEO Body Sculpting Machine

(https://rejuvafresh.com/products/premium-emszero-neo-body-sculpting-machine); Landing

Page for the Professional Body Sculpture EMSLIM NEO Machine

(https://rejuvafresh.com/products/emslim-neo-body-sculpture-machine); Landing Page for the

EMSLIM NEO for Home Use (https://rejuvafresh.com/products/emsculpt-neo-for-home-use);

Landing Page for the Portable EMSZERO NEO Body Contouring Machine

(https://rejuvafresh.com/products/portable-emszero-neo-body-contouring-machine); Landing

Page for the Personal EMS Sculpting Machine (https://rejuvafresh.com/products/personal-ems-

sculpting-machine).

101.    The Accused Devices include the claimed element "a connection to an energy

source" for the same reasons stated in paragraph 88.

102.    The Accused Devices include the claimed element "a switch." The manuals,

brochures, and landing pages for these devices represent that the devices have a switch. Ex. U at

4 (Personal EMSZERO NEO Sculpting Machine Manual); Ex. K at 4 (Mini EMSLIM NEO

Body Sculpting Machine Manual); Ex. L at 5 (Mini EMSLIM Body Sculpting Machine Manual);

Ex. V at 26 (EMSLIM Body Sculpting Machine Manual); Ex. S at 2 (EMSZERO NEO Body

Contouring Machine Manual); Ex. T at 4 (Professional EMSZERO NEO Body Sculpting

Machine Manual); Ex. R at 4 (Professional Body Sculpture EMSLIM NEO Machine Manual);

Ex. J at 4 (EMSLIM NEO for Home Use Manual); Ex. X at 4 (Portable EMSZERO NEO Body

Contouring Machine Manual); Ex. W at 2 (Personal EMS Sculpting Machine Manual).

103.    The Accused Devices include the claimed element "a coil." These devices include

applicators that house magnetic field generating coils for the same reasons stated in paragraph

86.

59

104.    The Accused Devices include the claimed element "an energy storage device" for the same reasons stated in paragraph 88.

105.    The Accused Devices include the claimed element "at least one blower." Ex. G. On information and belief, these devices include an air cooling system, which uses at least one blower to circulate air. The manuals, brochures, and landing pages for the EMSLIM Body Sculpting Machine, the EMSZERO NEO Body Contouring Machine, the Professional EMSZERO NEO Body Sculpting Machine, the Professional Body Sculpture EMSLIM NEO Machine, the EMSLIM NEO for Home Use, the Portable EMSZERO NEO Body Contouring Machine, and the Personal EMS Sculpting Machine, for example, represent that these devices include cooling systems that use air. *See* Ex. V at 7 (EMSLIM Body Sculpting Machine Manual); Ex. P at 2 (EMSZERO NEO Body Contouring Machine Brochure); Ex. Q at 2 (Professional EMSZERO NEO Body Sculpting Machine Brochure); Ex. O at 11 (Professional Body Sculpture EMSLIM NEO Machine Brochure); Landing Page for EMSLIM NEO for Home Use (https://rejuvafresh.com/products/emsculpt-neo-for-home-use); Landing Page for EMSLIM Body Sculpting Machine (https://rejuvafresh.com/products/emslim-body-sculpting-machine-with-4-handles); Landing Page for Portable EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/portable-emszero-neo-body-contouring-machine); Landing Page for Personal EMS Sculpting Machine (https://rejuvafresh.com/products/personal-ems-sculpting-machine). Furthermore, with respect to the Personal EMSZERO NEO Sculpting Machine, the Mini EMSLIM NEO Body Sculpting Machine, and the Mini EMSLIM Body Sculpting Machine, promotional and informational materials for these devices represent that the applicators for these devices contain ventilation holes, which, on information and belief, ventilate air that is being circulated by at least one blower.

106.     The Accused Devices include the claimed element "a casing." Ex. G. On information and belief, the shells of the applicators for these devices function as casing units for one or more blowers within the applicator.

107.     The Accused Devices include the claimed element "with the blower arranged on a circumference of the coil; and wherein the coil and the casing are arranged in a manner that fluid can flow in-between them and wherein the coil is cooled by fluid flow over at least upper and lower sides of the coil." *Id*. On information and belief, a reasonable opportunity for further investigation or discovery will show that at least one of the blowers within the applicators of these devices is arranged on the circumference of the coil within that applicator, and circulates air in-between the coil and the casing of the applicator, thereby cooling the coil by fluid flow over at least the upper and lower sides of the coil.

108.     Rejuva Fresh's direct infringement of the '519 patent has been and continues to be willful. On information and belief, Rejuva Fresh has been aware of the '519 patent since before the filing of this Complaint and has infringed the '519 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

109.     Rejuva Fresh's infringement of the '519 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Rejuva Fresh's infringing acts as provided by 35 U.S.C. § 284.

110.     BTL will suffer irreparable harm unless Rejuva Fresh is enjoined from infringing the '519 patent.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,596,386

111.     BTL repeats and re-alleges paragraphs 1-43 as if fully set forth herein.

112.    The '386 patent is directed towards methods and devices for treating patients with time varying magnetic fields. Exemplary Claim 12 of the '386 patent recites:

A treatment device for toning at least one muscle of a patient using a time-varying magnetic field, the treatment device comprising:

an applicator configured to be held in contact with a body region of the patient with a belt, the applicator housing a magnetic field generating device within a casing;

an energy storage device;

means for discharging energy from the energy storage device to the magnetic field generating device such that impulses of the time-varying magnetic field are generated, the time-varying magnetic field having a biphasic shape with a repetition rate in between 1 Hz and 700 Hz, an impulse duration between 3 μs to 10000 μs, and a maximal value of a magnetic flux derivative between 2.5 kT/s to 150 kT/s; and

means for cooling the magnetic field generating device by a fluid cooling media,

wherein the belt is configured to aid in positioning the applicator in order to apply the time-varying magnetic field with at least moto-threshold magnetic flux density to a peripheral neural system innervating the at least one muscle of the patient in order to repetitively contract the at least one muscle within the body region such that the at least one muscle is toned, the body region comprising one of the buttocks or abdomen.

113.    The Accused Devices include or perform each and every limitation of at least claim 12 of the '386 patent, either literally or under the doctrine of equivalents.

114.    Rejuva Fresh has and continues to directly infringe, literally or under the doctrine of equivalents, at least claim 12 of the '386 patent by making, using, offering to sell, selling, or importing the Accused Devices in the United States.

115.    Rejuva Fresh has induced infringement and continues to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 12 of the '386 patent, by encouraging, promoting, and instructing customers to use the Accused Devices in a manner that directly infringes at least claim 12 of the '386 patent.

116.    The Accused Devices include the preamble of claim 12 of the '386 patent, which recites "[a] treatment device for toning at least one muscle of a patient using a time-varying magnetic field." Ex. H. Promotional materials for these devices advertise and promote the ability of these devices to tone muscles using time-varying magnetic fields. *See, e.g.*, Landing Page for the EMSLIM NEO for Home Use (https://rejuvafresh.com/products/emsculpt-neo-for-home-use); Landing Page for the EMSLIM Body Sculpting Machine (https://rejuvafresh.com/products/emslim-body-sculpting-machine-with-4-handles); Landing Page for the Portable EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/portable-emszero-neo-body-contouring-machine); Landing Page for the Personal EMS Sculpting Machine (https://rejuvafresh.com/products/personal-ems-sculpting-machine).

117.    The Accused Devices include the claimed element "an applicator configured to be held in contact with a body region of the patient with a belt, the applicator housing a magnetic field generating device within a casing" for the same reasons stated in paragraph **Error! Reference source not found.**. Ex. H.

118.    The Accused Devices include the claimed element "an energy storage device" for the same reasons stated in paragraph 88. *Id*.

119.    The Accused Devices include the claimed element "means for discharging energy from the energy storage device to the magnetic field generating device such that impulses of the time-varying magnetic field are generated, the time-varying magnetic field having a biphasic shape with a repetition rate in between 1 Hz and 700 Hz, an impulse duration between 3 μs to 10000 μs, and a maximal value of a magnetic flux derivative between 2.5 kT/s to 150 kT/s." *Id*. The specifications section of the manual for the EMSLIM NEO for Home Use represents that the "pulse shape" of the device is a "Biphasic wave," and that the device has a "working voltage" of 60Hz and a "pulse" of 300 microseconds. Ex. J at 2 (EMSLIM NEO for Home Use Manual). Promotional and informational materials for the EMSLIM Body Sculpting Machine, the EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, the Professional EMSZERO NEO Body Sculpting Machine, the Professional Body Sculpture EMSLIM NEO Machine, the Mini EMSLIM NEO Body Sculpting Machine, the Mini EMSLIM Body Sculpting Machine, represent that the devices generate a repetition rate in between 1 Hz and 150 Hz. Ex. V at 47 (EMSLIM Body Sculpting Machine Manual); Ex. P at 2 (EMSZERO NEO Body Contouring Machine Brochure); Ex. W at 6 (Personal EMS Sculpting Machine Manual); Ex. Q at 2 (Professional EMSZERO NEO Body Sculpting Machine Brochure); Ex. O at 11 (Professional Body Sculpture EMSLIM NEO Machine Brochure); Ex. K at 17 (Mini EMSLIM NEO Body Sculpting Machine Manual); Ex. L at 26 (Mini EMSLIM Body Sculpting Machine Manual).[3] On information and belief, a reasonable opportunity for further investigation

---

[3] On information and belief, a reasonable opportunity for further investigation and discovery will show that the Portable EMSZERO NEO Body Contouring Machine and the

and discovery will show that the EMSLIM Body Sculpting Machine, the EMSZERO NEO Body Contouring Machine, the Personal EMS Sculpting Machine, the Professional EMSZERO NEO Body Sculpting Machine, the Professional Body Sculpture EMSLIM NEO Machine, the Mini EMSLIM NEO Body Sculpting Machine, the Mini EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body Contouring Machine, and the Personal EMSZERO NEO Sculpting Machine generate an impulse duration between 3 μs to 10000 μs. For example, promotional materials for these devices represent that the devices induce between 20,000 and 30,000 muscle contractions in a single 30-minute treatment session. Landing Page for the EMSLIM Body Sculpting Machine (https://rejuvafresh.com/products/emslim-body-sculpting-machine-with-4-handles); Landing Page for the Portable EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/portable-emszero-neo-body-contouring-machine); Landing Page for the EMSZERO NEO Body Contouring Machine (https://rejuvafresh.com/products/emszero-neo-body-contouring-machine); Landing Page for the Professional EMSZERO NEO Body Sculpting Machine (https://rejuvafresh.com/products/premium-emszero-neo-body-sculpting-machine) (describing "Pulse Width" as approximately 310 μs); Ex. K at 3 (Mini EMSLIM NEO Body Sculpting Machine Manual); Ex. L at 3 (Mini EMSLIM Body Sculpting Machine Manual); Ex. U at 2 (Personal EMSZERO NEO Sculpting Machine Manual). On information and belief, achieving this number of muscle contractions in a 30-minute session means it is likely that the applicators for these devices generate impulses that last between 3 microseconds and 3 milliseconds. On information and belief, a reasonable opportunity for further investigation and discovery will also

---

Personal EMSZERO NEO Sculpting Machine also generate a repetition rate in between 1 Hz and 700 Hz.

show that the EMSLIM Body Sculpting Machine, the Portable EMSZERO NEO Body

Contouring Machine, and the Personal EMS Sculpting Machine generate a maximal value of a

magnetic flux derivative between 2.5 kT/s to 150 kT/s.

120.    The Accused Devices include the claimed element "means for cooling the

magnetic field generating device by a fluid cooling media." Ex. H. The EMSLIM Body

Sculpting Machine, the EMSZERO NEO Body Contouring Machine, the Professional

EMSZERO NEO Body Sculpting Machine, the Professional Body Sculpture EMSLIM NEO

Machine, the EMSLIM NEO for Home Use, the Portable EMSZERO NEO Body Contouring

Machine, and the Personal EMS Sculpting Machine include this claim element for the same

reasons stated in paragraph 105. Promotional materials for the Personal EMSZERO NEO

Sculpting Machine represent that the device includes "continuous freezing technology" to

"ensure[] the treatment head does not over heat [sic]." Landing Page for the Personal EMSZERO

NEO Sculpting Machine (https://rejuvafresh.com/products/personal-emszero-neo-sculpting-

machine). On information and belief, a reasonable opportunity for further investigation and

discovery will show that the Mini EMSLIM Body Sculpting Machine and the Mini EMSLIM

NEO Body Sculpting Machine require a means for cooling the magnetic field generating

components. Promotional materials for these devices represent that these devices can generate an

output power of 1500 Watts. Landing Page for the Mini EMSLIM NEO Body Sculpting

Machine (https://rejuvafresh.com/products/emslim-neo-rf-machine); Landing Page for the Mini

EMSLIM Body Sculpting Machine (https://rejuvafresh.com/products/mini-emslim-body-

sculpting-machine).

121.    The Accused Devices include the claimed element "wherein the belt is configured

to aid in positioning the applicator in order to apply the time-varying magnetic field with at least

moto-threshold magnetic flux density to a peripheral neural system innervating the at least one muscle of the patient in order to repetitively contract the at least one muscle within the body region such that the at least one muscle is toned, the body region comprising one of the buttocks or abdomen" for the same reasons stated in paragraphs **Error! Reference source not found.** and 90. Ex. H.

122.    By using, offering to sell, selling, and importing into the United States the Accused Devices, Rejuva Fresh has and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 12 of the '386 patent.

123.    Rejuva Fresh's direct infringement of the '386 patent has been and continues to be willful. On information and belief, Rejuva Fresh has been aware of the '386 patent since before the filing of this Complaint and has infringed the '386 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271. BTL also identified the '386 patent at www.btlnet.com/patents as among the patents covering BTL's EMSCULPT device.

124.    Rejuva Fresh's infringement of the '386 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Rejuva Fresh's infringing acts as provided by 35 U.S.C. § 284.

125.    BTL will suffer irreparable harm unless Rejuva Fresh is enjoined from infringing the '386 patent.

### COUNT VI: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

126.    BTL repeats and re-alleges paragraphs 1-43 as if fully set forth herein.

127.    BTL owns exclusive rights to the BTL Trademarks in the United States. The United States trademark registrations for the BTL Trademarks are in full force and effect.

128.    Rejuva Fresh, without BTL's permission or consent, has used and continues to use the BTL Trademarks in connection with the advertising, promotion, sale, and offer for sale of the Accused Devices.

129.    On information and belief, Rejuva Fresh's unauthorized use of the EM trademark to advertise and promote at least the EMSLIM NEO for Home Use, the Mini EMSLIM NEO Body Sculpting Machine, and the Mini EMSLIM Body Sculpting Machine, *see supra* ¶ 32, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of these devices; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of these devices.

130.    On information and belief, Rejuva Fresh's unauthorized use of the HIFEM trademark to advertise and promote at least the Mini EMSLIM Body Sculpting Machine and the Mini EMSLIM NEO Body Sculpting Machine, *see supra* ¶ 33, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of these devices; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of these devices.

131.    On information and belief, Rejuva Fresh's unauthorized use of the HIFM mark—which is a confusingly similar variation of BTL's HIFEM mark—to advertise and promote at least the Mini EMSLIM NEO Body Sculpting Machine, *see supra* ¶ 33, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the device; its affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of this device.

132.    On information and belief, Rejuva Fresh's unauthorized use of the EMSCULPTING, EM-S-SCULPT, EM-SCULPT, and EM SCULPT marks—which are

confusingly similar variations of BTL's EMSCULPT, EMSCULPT NEO, and EM marks—to advertise and promote at least the EMSLIM NEO Body Sculpture Machine, the EMSLIM NEO, and the Mini EMSLIM devices, *see supra* ¶ 32, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of these devices; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of these devices. For example, several entities have sought trademark protection for marks similar to the ones used by Rejuva Fresh, and the USPTO has consistently found them to be confusingly similar to BTL's EMSCULPT, EMSCULPT NEO, and EM trademarks. *See, e.g.*, *In re* U.S. Trademark Application Serial No. 90778753, Office Action, (U.S.P.T.O. Apr. 12, 2022) (refusing trademark registration application for EM SLIM after finding that the mark was confusingly similar to BTL's EMSCULPT, EMSCULPT  NEO, and EM trademarks) (https://tsdr.uspto.gov/documentviewer?caseId=sn90778753&docId=OOA20220412092612#doc Index=3&page=1).

133.    On information and belief, Rejuva Fresh has had knowledge of BTL's rights in the BTL Trademarks since before the filing of this Complaint. Under 15 U.S.C. § 1072, Rejuva Fresh has had constructive knowledge of the BTL's rights in the EM trademark since at least November 19, 2019—the date the registration for the EM trademark first issued to BTL. Under 15 U.S.C. § 1072, Rejuva Fresh has had constructive knowledge of the BTL's rights in each of the EMSCULPT trademarks since at least the dates the registration for each of these trademarks first issued to BTL. *See supra* ¶ 23. Under 15 U.S.C. § 1072, Rejuva Fresh has had constructive knowledge of the BTL's rights in the HIFEM trademark since at least March 5, 2019—the date the registration for the HIFEM trademark first issued to BTL. Moreover, a straightforward Google search for "BTL" and "trademarks" lists the BTL Trademarks as associated with BTL.

https://www.trademarkia.com/company-btl-industries-inc-3618568-page-2-2. Finally, prior to the filing of this Complaint, Rejuva Fresh has known that BTL is the owner of a variety trademarks relating to body-contouring devices and services not least because (1) Rejuva Fresh has and continues to appropriate promotional photos belonging to BTL and clinical studies sponsored by BTL to promote the Accused Devices and (2) BTL sent Rejuva Fresh a cease-and-desist letter informing Rejuva Fresh that its promotional materials infringed certain trademarks belonging to BTL.

134.    The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

135.    Rejuva Fresh's trademark infringement has damaged, and continues to damage, BTL in an amount yet to be determined, but of at least the profits that Rejuva Fresh has made as a result of its infringement, plus the cost of this action. Rejuva Fresh's trademark infringement is the direct and proximate cause of BTL's damages.

136.    BTL is entitled to an injunction restraining Rejuva Fresh, its officers, agents, and employees, and all persons acting in concert with Rejuva Fresh, from engaging in any further such acts in violation of federal trademark law.

### COUNT VII: FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING UNDER 15 U.S.C. § 1125

137.    BTL repeats and re-alleges paragraphs 1-43 as if fully set forth herein.

138.    Rejuva Fresh's unauthorized, intentional, and willful use of the BTL Trademarks to promote, market, offer for sale, and sell the Accused Devices has and is likely to confuse, mislead, or deceive as to the origin and quality of these devices, their association with BTL and BTL's EMSCULPT device, and the sponsorship or approval by BTL of these devices.

139.    Rejuva Fresh's unauthorized, intentional, and willful use of the BTL Trademarks to promote, market, offer for sale, and sell the Accused Devices misrepresents the nature, characteristics, qualities, and geographic origin of these devices.

140.    Rejuva Fresh's unauthorized, intentional, and willful use of research findings from BTL-sponsored clinical studies to promote, market, offer for sale, and sell at least the Mini EMSLIM NEO Body Sculpting Machine, the Mini EMSLIM Body Sculpting Machine, and the EMSLIM Body Sculpting Machine, *see supra* ¶¶ 39-43, constitutes false or misleading descriptions or representations of fact that have and are likely to confuse, mislead, or deceive as to the origin and quality of these devices, their association with BTL and BTL's EMSCULPT device, and the sponsorship or approval by BTL of these devices.

141.    Rejuva Fresh's unauthorized, intentional, and willful use of research findings from BTL-sponsored clinical studies to promote, market, offer for sale, and sell at least the Mini EMSLIM NEO Body Sculpting Machine, the Mini EMSLIM Body Sculpting Machine, and the EMSLIM Body Sculpting Machine, *see supra* ¶¶ 39-43, constitutes false or misleading descriptions or representations of fact that misrepresent the nature, characteristics, qualities, and geographic origin of these devices.

142.    Rejuva Fresh's unauthorized, intentional, and willful use of the BTL Photos to promote, market, offer for sale, and sell at least the Personal EMSZERO NEO Sculpting Machine and the EMSZERO NEO Body Contouring Machine, *see supra* ¶¶ 34-38, has and is likely to confuse, mislead, or deceive as to the origin and quality of these devices, their association with BTL and BTL's EMSCULPT device, and the sponsorship or approval by BTL of these devices.

143.    Rejuva Fresh's unauthorized, intentional, and willful use of the BTL Photos to promote, market, offer for sale, and sell at least the Personal EMSZERO NEO Sculpting Machine and the EMSZERO NEO Body Contouring Machine, *see supra* ¶¶ 34-38, constitutes false or misleading descriptions or representations of fact that misrepresent the nature, characteristics, qualities, and geographic origin of these devices.

144.    Rejuva Fresh's actions constitute a willful violation of 15 U.S.C. § 1125.

145.    Rejuva Fresh's actions described above have injured and, if permitted to continue, will continue to harm BTL's business and the goodwill associated with its brand, as well as BTL's reputation for providing high-quality and safe body-contouring aesthetic devices and procedures subject to strict quality control standards that have been cleared by the FDA.

146.    BTL has no adequate remedy at law, and if Rejuva Fresh's actions are not enjoined, BTL will continue to suffer irreparable harm to its reputation and the goodwill of the BTL brand.

### COUNT VIII: VIOLATION OF THE MAINE DECEPTIVE TRADE PRACTICES ACT UNDER 10 M.R.S.A. § 1211 *ET SEQ.*

147.    BTL repeats and re-alleges paragraphs 1-43 as if fully set forth herein.

148.    Rejuva Fresh has, without BTL's permission or consent, intentionally and willfully used the BTL Trademarks, confusingly similar variations of the BTL Trademarks, research findings from the BTL Studies, and the BTL Photos to promote, market, offer for sale, and sell the Accused Devices for the same reasons stated in Counts VI-VII of this Complaint.

149.    Rejuva Fresh's unauthorized, intentional, and willful use of the BTL Trademarks, confusingly similar variations of the BTL Trademarks, research findings from the BTL Studies, and the BTL Photos to promote, market, offer for sale, and sell the Accused Devices has caused

and is likely to cause consumer confusion for the same reasons stated in Counts VI-VII of this Complaint.

150.     Rejuva Fresh's unauthorized, intentional, and willful use of the BTL Trademarks, confusingly similar variations of the BTL Trademarks, research findings from the BTL Studies, and the BTL Photos to promote, market, offer for sale, and sell the Accused Devices therefore constitutes an unfair trade practice in violation of Maine's Deceptive Trade Practices Act, 10 M.R.S.A. §1211, *et seq.*

151.     Rejuva Fresh's actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill created by BTL.

152.     BTL has sustained injury, damage, and loss in Florida based on Rejuva Fresh's actions.

153.     Pursuant to Sections 501.2105 and 501.211, BTL is entitled to recover its actual damages, plus reasonable attorneys' fees and costs.

## COUNT IX: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

154.     BTL repeats and re-alleges paragraphs 1-43 as if fully set forth herein.

155.     BTL owns exclusive rights to the BTL Trademarks in the United States. The United States trademark registration for the BTL Trademarks are in full force and effect.

156.     For reasons stated in Counts VI-VIII of this Complaint, Rejuva Fresh has, without BTL's permission or consent, intentionally and willfully used the BTL Trademarks, confusingly similar variations of the BTL Trademarks, research findings from the BTL Studies, and the BTL Photos to promote, market, offer for sale, and sell the Accused Devices.

157.     For reasons stated in Counts VI-VIII of this Complaint, Rejuva Fresh's actions have caused and are likely to cause consumer confusion.

158.    As a proximate result of Rejuva Fresh's actions, BTL has suffered and will continue to suffer damages.

159.    BTL has no adequate remedy at law and will continue to suffer irreparable harm unless Rejuva Fresh is enjoined.

160.    By reason of Rejuva Fresh's unlawful conduct as alleged above, BTL has been substantially injured and is entitled to damages and Rejuva Fresh profits attributable to its unlawful conduct, which are presently indeterminate, and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE BTL requests entry of judgment against Rejuva Fresh as follows:

A.    A judgment that Rejuva Fresh has infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b)-(c);

B.    An award of damages for infringement of the Asserted Patents, with said damages to be trebled because of the intentional and willful nature of Rejuva Fresh's infringement, as provided by 35 U.S.C. § 284;

C.    A judgment that Rejuva Fresh has willfully infringed one or more claims of the Asserted Patents;

D.    A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of BTL's reasonable attorneys' fees;

E.    An order permanently enjoining Rejuva Fresh, its officers, directors, employees, agents, and all persons acting in concert with them, from infringing the Asserted Patents;

F.    A judgment that Rejuva Fresh has violated the Lanham Act, 15 U.S.C. § 1114, by committing acts of trademark infringement;

G.    A judgment that Rejuva Fresh has violated the Lanham Act, 15 U.S.C. § 1125(a), by committing acts of federal unfair competition, false designation of origin, and false

advertising;

H.     An award of damages for Rejuva Fresh infringement of the BTL Trademarks, including Rejuva Fresh's profits, any damages sustained by BTL, and the costs of the action as provided by 15 U.S.C. § 1117(a), with said damages to be trebled because of the intentional and willful nature of Rejuva Fresh's infringement, as provided by 15 U.S.C. § 1117(b);

I.     A judgment that this case is "exceptional" under 15 U.S.C. § 1117(a) and an award of reasonable attorneys' fees;

J.     A judgment that Rejuva Fresh has violated Maine's Deceptive Trade Practices Act, 10 M.R.S.A. § 1200, *et seq.*;

K.     A judgment that Rejuva Fresh has infringed the BTL Trademarks and committed unfair trade practices in violation of Maine common law;

L.     An award of damages against Rejuva Fresh as a result of its wrongful acts against BTL in an amount to be proved at trial;

M.     An award of any and all of Rejuva Fresh's profits arising from the foregoing acts;

N.     An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

O.     Permanent injunctive relief enjoining Rejuva Fresh from:

   i.     using the BTL Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the promotion, marketing, advertising, offering for sale, or sale of any good or service that is not a good or service offered by a genuine BTL product, or is not authorized by BTL to be offered in connection with the BTL Trademarks;

   ii.     passing off, inducing, or enabling others to sell or pass off any good or service

as a good or service offered by a genuine BTL product, or any other good or service offered by BTL, that is not BTL's or not offered under the authorization, control, or supervision of BTL and approved by BTL for sale under the BTL Trademarks;

    iii.    committing any acts calculated to cause consumers to believe that Rejuva Fresh's goods or services are those sold under the authorization, control or supervision of BTL, or are sponsored by, approved by, or otherwise connected with BTL; and

    iv.    further infringing the BTL Trademarks and damaging BTL's goodwill.

P.    An award of BTL's costs and expenses in this action; and

Q.    For such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff BTL Industries, Inc. respectfully demands a trial by jury of any issues triable of right by a jury.

Dated: January 17, 2023

*Of Counsel:*

J.C. Rozendaal (*pro hac vice* to be filed)
Chandrika Vira (*pro hac vice* to be filed)
Monica R. Talley (*pro hac vice* to be filed)
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 New York Ave., NW, Suite 600
Washington, DC 20005
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
jcrozendaal@sternekessler.com
cvira@sternekessler.com
mtalley@sternekessler.com

Respectfully submitted,

*/s/ Kyle M. Noonan*
Kyle M. Noonan
knoonan@pierceatwood.com
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME  04101
(207) 791-1100

*Attorneys for Plaintiff BTL Industries, Inc.*